**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HIRSCHBACH MOTOR LINES, INC.; JOHN CHRISTNER TRUCKING, LLC; THREE DIAMOND LEASING, LLC; GR EQUIPMENT LEASING, INC.; SCHUSTER COMPANY; SCHUSTER ENTERPRISES, LTD.; AEG LEASING LLC; SCHUSTER COMPANY, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>NAVISTAR, INC.; PACCAR INC.; and BENDIX COMMERCIAL VEHICLE SYSTEMS LLC,<br><br>Defendants | Case No.: 1-24-cv-11979<br><br>JURY TRIAL DEMANDED |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiffs Hirschbach Motor Lines, Inc., John Christner Trucking, LLC, Three Diamond Leasing, LLC, GR Equipment Leasing, Inc., Schuster Company, Schuster Enterprises, LTD., AEG Leasing LLC, and Schuster Company, LLC, ("Plaintiffs") bring this action as proposed class representatives, by and through their attorneys, and assert the following Class Action claims against Defendants Navistar, Inc. ("Navistar"), Paccar Inc. ("Paccar") and Bendix Commercial Vehicle Systems LLC ("Bendix"), (collectively "Defendants"):

## I. Introduction & Summary of the Class Claims

Plaintiffs are national motor carriers, or the owners of commercial motor vehicles manufactured by Navistar or Paccar and equipped with the Bendix Frontal Crash Avoidance and Mitigation Systems for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes. Frontal Crash Avoidance and Mitigation Systems (commonly referred to as

"FCA" in the trucking industry) are meant to prevent or mitigate rear-end crashes between power units equipped with FCA systems and other vehicles on the road that are stopped or slowing. Bendix manufactures and sells two FCA systems that are marketed under the names Bendix Wingman Fusion System and Bendix Wingman Advanced System (the "defective Bendix systems") for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce. The Bendix Wingman Fusion integrates a camera system and a radar system. The Bendix Advanced System is a radar-only system.

Plaintiffs' business is the hauling of freight for compensation throughout the country using commercial motor vehicles (18-wheelers). Plaintiffs purchased commercial motor vehicle power units equipped with FCA systems manufactured and supplied by Bendix to Navistar and Paccar for installation and use on the power units or "tractors" in tractor-trailer commercial motor vehicles. Navistar and Paccar are manufacturers of power units which are equipped with either the Bendix Wingman Fusion System or the Bendix Advanced System. Plaintiffs have purchased thousands of power units sold by Navistar and Paccar equipped with one or the other of the defective Bendix systems and Plaintiffs currently operate more than 1,000 such power units.

In purchasing and operating these power units in its commercial motor vehicle business, Plaintiffs justifiably relied upon the knowledge, skill, and expertise of Navistar, Paccar, and Bendix to provide power units with reasonably safe and performing FCA systems in accordance with Navistar's, Paccar's, and Bendix's sales representations regarding these defective Bendix systems' capabilities. Navistar, Paccar, and Bendix sold these defective Bendix systems with actual knowledge that both the Wingman Fusion and Wingman Advanced systems were defective and not suitable for their intended, advertised purpose while concealing these facts from Plaintiffs and the class. Bendix, Paccar, and Navistar concealed from Plaintiffs the fact that the defective Bendix systems fail in their intended and designed purpose and further fail to perform as advertised to Plaintiffs and others similarly situated. Hundreds of thousands of trucks were affected, potentially across thousands, or tens of thousands, of individual purchasers, and the damages to each truck from the defective Bendix systems are in the tens of thousands of dollars.

Therefore, the wrongdoing of Navistar, Paccar, and Bendix caused Plaintiffs millions of dollars in damages and the class has suffered hundreds of millions of dollars in damages.

Plaintiffs only recently learned of the defective nature of the defective Bendix systems through recent expert testing. This testing revealed that both the Bendix Wingman Fusion System and Bendix Wingman Advanced System simply fail to perform at highway speeds and fail at their essential and intended purpose. The Defendants had actual knowledge of the defects in these systems since 2015 but chose to intentionally withhold that information from Plaintiffs. As a result, this action is timely filed for purposes of the statute of limitations as to all vehicles purchased by Plaintiffs equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced crash mitigation system. Plaintiffs bring these claims on behalf of themselves, and all others similarly situated.

## II. Parties

1. Hirschbach Motor Lines, Inc. is a corporation organized under the laws of the State of Iowa, with its principal place of business in the State of Iowa.

2. John Christner Trucking, LLC is an Oklahoma LLC organized under the laws of the State of Oklahoma with its principal place of business in the State of Oklahoma. This Plaintiff's membership can be traced to a single corporation owning 100% of its interest that is based in Iowa.

3. Three Diamond Leasing, LLC is an Oklahoma LLC organized under the laws of the State of Oklahoma with its principal place of business in the State of Oklahoma. This Plaintiff's membership can be traced to a single corporation owning 100% of its interest that is based in Iowa.

4. GR Equipment Leasing, Inc. is a Delaware Corporation with its principal place of business in Iowa.

5. Schuster Company is an Iowa Corporation with its principal place of business in Iowa.

6. Schuster Enterprises, LTD., is an Iowa Corporation with its principal place of business in Iowa.

7. AEG Leasing LLC is an Iowa LLC with its principal place of business in Iowa. This Plaintiff's membership can be traced to a single individual owning 100% of its interest who is a resident of Iowa.

8. Schuster Co. LLC is an Iowa LLC with its principal place of business in Iowa. This Plaintiff's membership can be traced to three individuals, two of whom are residents of Florida and one of whom resides in Iowa.

9. Navistar, Inc. (hereinafter "Navistar") is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Illinois, in DuPage County, and within the Eastern Division of the Northern District of Illinois.

10. Paccar, Inc (hereinafter "Paccar") is a corporation organized under the laws of the State of Delaware, with its headquarters in Bellevue, Washington, and is publicly traded on the NASDAQ exchange under the symbol PCAR.

11. Bendix Commercial Vehicle Systems LLC (hereinafter "Bendix") upon information and belief, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in the State of Ohio. Bendix's ownership can be traced to a German publicly traded company whose principal place of business is outside of the United States.

Bendix is subject to specific personal jurisdiction here. Bendix admittedly "designs, develops, and supplies" the defective Wingman Fusion and Wingman Advanced systems for "commercial vehicles throughout North America," including Illinois. Bendix entered into a conspiracy to fraudulently conceal the defective nature of its Wingman Fusion and Wingman Advanced systems with its co-defendants, centered in the State of Illinois, and began with an agreement between Bendix and Navistar formed in Lisle, Illinois. Bendix has chosen to do business in Illinois for over 20 straight years. That business includes marketing and selling the defective Wingman systems that prompted this litigation for Illinois-based trucking companies. For decades, Bendix has thoroughly, deliberately, and successfully exploited the Illinois market. It advertises in Illinois, solicits business from Illinois consumers, and sells products for use in Illinois. It provides technical

training for the Wingman systems in Illinois for Illinois businesses. It maintains a registered agent in Illinois located about 0.2 miles from this Courthouse. And it is currently litigating another case involving the same product-defect allegations in Illinois. In short, Bendix purposely directed its activities to Illinois, this litigation relates to those activities, and finding specific personal jurisdiction is fair.

## III. Jurisdiction and Venue

12. Under 28 U.S.C. § 1332, this Court has proper jurisdiction because all parties are diverse and the amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs.

13. Under 28 U.S.C. § 1332(d), this Court has proper jurisdiction because PLAINTIFFS bring this claim as a class action, there is more than $5,000,000 in controversy, there is minimal diversity, and there are more than 50 class members.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims and causes of action occurred in this district.

## IV. Factual Allegations

15. Navistar is a Delaware Corporation with its principal place of business located in Lisle, Illinois. Navistar manufactures and distributes Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

16. Paccar is a Delaware Corporation with its principal place of business located in Bellevue, Washington. Paccar manufactures and distributes Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

17. Bendix is a Delaware Limited Liability Company with its principal place of business located in Avon, Ohio. Bendix Commercial Vehicle Systems offers numerous component parts and systems for trucks and trailers, including antilock brake systems, stability

systems, steering, advanced driver assistance systems, valves, accident mitigation/avoidance systems and complete wheel–end solutions.

18. Frontal Crash Avoidance and Mitigation Systems (hereinafter "FCA") are meant to prevent or mitigate rear-end crashes between power units equipped with FCA systems and other vehicles on the road that are stopped or slowing.

19. Bendix is a manufacturer of FCA systems for use on Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

20. FCA technology is meant to act as a failsafe when the operator of a power unit fails to appreciate an impending collision with a stopped or slowing vehicle for any reason. In the trucking industry, it is foreseeable that a commercial driver might be distracted or otherwise prevented from appreciating an impending rear-end collision for several reasons including, but not limited to, distraction, impaired visibility, weather conditions, or environmental conditions. Safety testing has revealed that properly working FCA systems eliminate most of these types of crashes and mitigate the severity of others if the FCA system provides adequate and timely driver alerts and autonomous braking.

21. Bendix manufactures FCA systems and sells them to Original Equipment Manufacturers ("OEMs"), like Navistar and Paccar, to be equipped on the power units sold by Navistar and Paccar as original equipment.

22. Bendix has two primary FCA systems used by OEMs for this purpose: (1) the Bendix Wingman Fusion System and (2) the Bendix Wingman Advanced System.

23. The Bendix Wingman Fusion System combines several components including Fusion radar, Fusion camera, Safety Direct Processor, and Fusion brake controller into a computerized system which, relevant here, is supposed to provide Autonomous Emergency Braking, Stationary Vehicle Braking, Following Distance Alert, Impact Alert, and Stationary Object Alert up to 3.5 seconds before an impending rear-end collision between another vehicle or vehicle trailer and a power unit equipped with a Bendix Wingman Fusion System.

24. The Bendix Wingman Advanced System combines several components, including radar, into a computerized system which, relevant here, is supposed to provide Autonomous Emergency Braking, Following Distance Alert, Impact Alert, and Stationary Object Alert at up to 3.0 seconds before an impending rear-end collision between another vehicle or object and a power unit equipped with a Bendix Wingman Advanced System. The Bendix Wingman Advanced System does not have a camera.

25. Since Bendix began selling these two defective Bendix systems, Plaintiffs have purchased thousands of Navistar and Paccar power units equipped with the defective Bendix systems. The Class members have purchased hundreds of thousands of Navistar and Paccar power units equipped with either of the defective Bendix systems.

26. Every single power unit purchased from Defendants equipped with either of the defective Bendix systems is defective.

27. Plaintiffs' and the Class members' decisions to purchase power units from Navistar and Paccar, equipped with the defective Bendix systems, were heavily influenced by the written representations made by Navistar, Paccar, and Bendix touting the efficacy and safety of the two defective Bendix systems.

28. For example, attached as Exhibit A is a Bendix Fusion Brochure from 2021. Page 3 of this document states (under Figure B) that "When Bendix Fusion can definitively identify the large, stationary, in-lane, metallic object as a vehicle, the system will alert the driver with up to 3.5 seconds of notice. Then, if necessary, it will automatically apply the vehicle's foundation brakes to help mitigate, or help lessen the severity of, a potential collision."

29. On page 8 of this brochure, there is a list of features on the page titled "Bendix System Comparison" that shows both the Wingman Advanced and Wingman Fusion provide: Autonomous Emergency Braking, Following Distance Alert, Impact Alert, and Stationary Object Alert.

30. Also attached to this complaint is Exhibit B, a brochure from 2019 from Mack Trucks which includes on page 2 a similar written representation regarding Wingman Fusion

which states: "When Bendix Wingman Fusion can definitively identify the large, stationary object as a vehicle, the system will alert the driver with 3.5 seconds of notice. Then, if necessary, it will automatically apply the brakes."

31. Attached as Exhibit C to this complaint is an International (Navistar) branded brochure from 2021 on the Bendix Wingman Fusion. Page 3 of this brochure is identical to page 3 of Exhibit A and makes the identical representations of performance. In fact, the entire brochure is identical other than the first page where International's branding is present. This includes page 8 showing the same features as Exhibit A, page 8.

32. Attached as Exhibit D to this complaint is an International (Navistar) branded brochure for school buses from 2021. This document utilizes imagery of school buses rather than 18-wheelers but otherwise contains the same language and relevant representations throughout including page 3 (identical to Exhibit A and C), and the same chart of features on page 8 as Exhibits A and C.

33. Upon information and belief, these representations were made in writing to the Plaintiffs and the class through a coordinated marketing campaign intended to conceal the defects in the Wingman Fusion and Wingman Advanced systems from July 2015 through January of 2024.

34. During the July 2015 through January 2024 time period, Defendants conspired together to conceal and suppress the known defects in the Wingman Fusion and Wingman Advanced systems while actively touting false and fraudulent performance features for these systems.

35. During the July 2015 through January 2024 time period, Defendants conspired together to uniformly market the false and fraudulent performance features of the Wingman Fusion and Wingman Advanced systems through uniform written marketing materials touting the Wingman Fusion and Wingman Advanced systems as providing either 3.5 seconds of notice (Fusion) or 3.0 seconds of notice (Advanced).

36. During the July 2015 through January 2024 time period, Defendants conspired together to uniformly market the false and fraudulent performance features of the Wingman Fusion and Wingman Advanced systems through uniform written marketing materials touting the Wingman Fusion and Wingman Advanced systems as providing Autonomous Emergency Braking, Following Distance Alert, Impact Alert, and Stationary Object Alert.

37. At all times relevant to the July 2015 through January 2024 time period, Defendants knew these marketing materials were false, fraudulent, and concealed the true facts regarding the performance of the Wingman Fusion and Wingman Advanced systems.

38. Bendix markets its Wingman Advanced System as "the latest innovation for school buses," promising a "potent combination of active safety technologies." Bendix promises that the System gives drivers stationary object alerts—"3.0 second" warnings comprising "audible and visual alerts" when metallic objects may be blocking the road.

39. Bendix markets its Wingman Fusion System as their "Most Advanced Safety System ***Ever***." Bendix touts that the System is "the commercial vehicle market's first advanced driver assistance system" with "enhanced collision mitigation." Bendix promises 3.5-second alerts along with automatic braking.

40. Navistar, Paccar, and Bendix repeatedly represented that the Wingman Fusion System would provide up to 3.5 seconds of warning, alerting the driver of a power unit equipped with the Bendix Fusion System, of an impending rear-end collision with either a stopped or slowing vehicle in the power unit's path of travel. This was uniformly represented across written marketing materials provided by Bendix, Navistar, and Paccar to Plaintiffs and the Class from July of 2015 until January of 2024.

41. Navistar, Paccar, and Bendix repeatedly represented that the Bendix Wingman Advanced System would provide up to 3.0 seconds of warning, alerting the driver of a power unit equipped with the Bendix Advanced System, of an impending rear-end collision with either a stopped or slowing vehicle in an equipped power unit's path of travel. This was uniformly

represented across written marketing materials provided by Bendix, Navistar, and Paccar to Plaintiffs and the class from July of 2015 until January of 2024.

42. In January of 2024, the Defendants began to uniformly make a new representation: "Bendix Fusion (F2.10) DOES NOT contain the Stationary Object Alert feature as previous versions did. If the system cannot definitively identify an object as a detected forward vehicle, it will NOT alert the driver. Because each truck manufacturer may implement differing feature sets of the Bendix Fusion system over time, please check with your OE or dealer – and read the Operator's Manual (BW8203) and Challenging Scenarios (BW8107) – available at B2Bendix.com – to learn more about the features and performance capabilities, including system limitations, available on your vehicle." This new representation was again uniformly made in written materials by all Defendants. *See* Page 2 of Exhibits E, F, and G (two-page brochures regarding the Wingman Fusion system containing this new representation branded for Navistar, Peterbilt, and Kenworth trucks).

43. Other than stating the Stationary Object Alert had been removed, the Defendants did not alert anyone to the falsity of prior written representations regarding the performance and features of the Wingman Fusion and Wingman Advanced systems.

44. Even if this notice could be classified as inquiry notice of fraud, suit was filed within the statute of limitations for fraud.

45. The Plaintiffs and the class had no way to know of the falsity of the Defendants' representations and no way to learn the true facts which the Defendants had chosen to suppress and withhold in the exercise of ordinary care and reasonable due diligence.

46. Upon information and belief, Navistar and Paccar properly installed the Bendix Wingman Fusion System or Bendix Wingman Advanced System in the power units purchased by Plaintiffs and the class before the delivery of equipped power units to Plaintiffs and the class.

47. The Bendix Wingman Fusion System and Bendix Wingman Advanced System were designed, manufactured, supplied, distributed, and/or sold by Bendix, Navistar, and Paccar and were received by Plaintiffs and the class.

48. The power units equipped with either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System were defective, caused injury and damage to Plaintiffs and the class, were unreasonably dangerous for their intended and expected use, and the unreasonably dangerous and defective condition existed at the time the power units left Bendix's, Navistar's, and Paccar's control.

49. At all material times, these defective Bendix systems were properly maintained by Plaintiffs and the class and were in good working order given the maintenance practices engaged in by Plaintiffs and the class. No fault codes triggered in these defective Bendix systems which would show that the systems were malfunctioning or behaving in an unusual fashion prior to numerous accident events occurring while power units equipped with these systems were being operated by Plaintiffs and the class. These accident events have led to millions of dollars in financial losses caused by the failure of these defective Bendix systems to perform as represented and intended.

50. Plaintiffs are in the class of persons that Bendix, Paccar, and Navistar should have reasonably foreseen may be subject to harm caused by the defective design and/or manufacture of these power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System.

## A. DEFENDANTS' CONSPIRACY

51. During product development and/or testing of the Bendix Wingman Fusion System, on or about April 2, 2015, Navistar performed independent test drives of power units equipped with the Bendix Wingman Fusion System.

52. During the testing, the Bendix Wingman Fusion System failed to detect a stationary pickup truck/utility trailer combination ahead of the Navistar power unit 30-50 percent of the time, resulting in the complete failure of its Autonomous Emergency Braking system to engage in each instance.

53. On or about the same date, Navistar sent correspondence to Bendix documenting the detection and braking failures to William Amato, who was the Lead Engineer for the Bendix Wingman Fusion System.

54. Despite having actual knowledge of these detection and braking failures, Bendix (1) performed no further product testing of the Bendix Wingman Fusion System to specifically address Navistar's concerns, (2) classified the issue as "benign" in internal memoranda, and (3) determined to launch the Bendix Wingman Fusion System as scheduled and with current functionality.

55. On or about July 2015, Navistar sent email correspondence to Bendix representatives with additional complaints about the performance of the Bendix Wingman Fusion System, including, but not limited to, the radar cone of vision being too narrow, necessitating the target vehicle ahead to be positioned directly in front of the radar sensor to be properly detected and alerted to the same.

56. The issues Navistar identified for Bendix in July 2015 were included in Bendix literature provided to NHTSA identifying many of these situations as "Challenging Scenarios" in publication numbered BW8107 mentioned in Exhibits E, F, and G in January of 2024.

57. On or about October 2015, Bendix performed a competitor comparison of then-existing FCA systems in the marketplace, including, but not limited to, the Detroit Assurance 2.0-4.0 and/or Meritor WABCO OnGuard Collision systems.

58. As a result of said competitor comparison, Bendix and Navistar had actual or constructive knowledge of reasonably feasible alternative designs of radar, camera, and/or algorithmic components that would detect the presence of stopped vehicles or vehicles traveling at substantially slower speeds and in the lane of travel of the Navistar and Paccar power units equipped with either of the defective Bendix systems., All of which was known, or should have been known as reasonably-foreseeable scenarios to Bendix, Paccar, and Navistar, and that the defective Bendix systems should be able to properly identify and warn a commercial motor vehicle

driver with timely and adequate alerts to allow the driver to take corrective action to avoid a rear-end collision.

59. At all relevant times, Bendix, Paccar, and Navistar had a duty to warn its users and consumers of the risks and dangers associated with the subject power units equipped with either of the defective Bendix systems, and what their system design could not eliminate, design out, or guard against. The Defendants chose to conceal these facts and withhold their knowledge of these defects from the Plaintiffs and the class.

60. At all relevant times, Bendix, Paccar, and Navistar knew or reasonably should have known that the class members' power units, equipped with either of the defective Bendix systems, were unreasonably dangerous and defective when used as directed, intended, and as designed for these reasonably foreseeable events. The Defendants chose to conceal these facts and withhold their knowledge of these defects from the Plaintiffs and the class.

61. The class members' power units, equipped with either of the defective Bendix systems, were defective in design, formulation, and construction, and were unreasonably dangerous when the power units left the control of Bendix, Paccar, and Navistar, and reached Plaintiffs without substantial alteration in the condition in which the power units were sold. The Defendants chose to conceal these facts and withhold their knowledge of these defects from the Plaintiffs and the class.

62. At all relevant times, Bendix, Paccar, and Navistar marketed and advertised the Bendix Wingman Fusion System as a next-generation advanced safety technology that provided a comprehensive driver assistance system more powerful than other safety system technology combinations in the North American commercial-vehicle marketplace. The Defendants chose to conceal the true facts and withhold their knowledge of these defects from the Plaintiffs and the class.

63. At all relevant times, Bendix, Paccar, and Navistar marketed and advertised the Bendix Wingman Fusion System as an advanced safety technology that would provide drivers with up to 3.5 seconds of warnings at highway speeds to allow corrective action to prevent or

mitigate foreseeable rear-end collisions between their power units and other vehicles or objects stopped or slowing in their power units' path of travel.

64. At all relevant times, Bendix, Paccar, and Navistar marketed and advertised the Bendix Wingman Advanced System as an industry-leading advanced safety technology that would provide its customer-drivers with up to 3.0 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate foreseeable rear-end collisions between their power units and other vehicles or objects stopped or slowing in their power units' path of travel.

65. Bendix's, Paccar's, and Navistar's continuing representations that the Bendix Wingman Fusion System was the most powerful safety system available was false and the Defendants knew these statements were false when made.

66. Bendix's, Paccar's, and Navistar's continuing representations that the Bendix Wingman Fusion System was an advanced safety technology that would provide drivers with 3.5 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate collisions were false, and the Defendants knew these statements were false when made.

67. Bendix's, Paccar's, and Navistar's continuing representations that the Bendix Wingman Advanced System was an advanced safety technology that would provide drivers with 3.0 seconds of warnings at highway speeds to allow corrective action to prevent or mitigate collisions were false, and the Defendants knew these statements were false when made.

68. Bendix, Paccar, and Navistar concealed their knowledge of the true facts, that both the Bendix Wingman Fusion System and the Bendix Wingman Advanced System would fail in their essential design and purpose at highway speeds and would not provide adequate and timely warnings and automated emergency braking assistance to drivers in time to prevent or mitigate collisions.

69. Bendix, Paccar, and Navistar also represented and advertised that the Bendix Wingman Fusion System's technical advances delivered, among other things, stationary vehicle braking and/or alerts to the commercial motor vehicle driver. The Bendix Wingman Fusion

System was marketed, promoted, and designed to alert a driver or engage the Autonomous Emergency Braking system up to 3.5 seconds before an impact. The timing of this alert is understood to provide a reasonable commercial driver with sufficient time to avoid or mitigate foreseeable rear-end collisions involving either stopped or slowing vehicles and power units equipped with the Bendix Wingman Fusion System.

70. Bendix, Paccar, and Navistar marketed, promoted, designed, and manufactured the Bendix Wingman Fusion System to detect objects, moving and stationary, within a range of 22 degrees and up to 500 feet away.

71. Bendix, Paccar, and Navistar marketed, promoted, designed, and manufactured the Bendix Wingman Fusion System to create a viewing angle of 42 degrees when the radar and camera worked together, specifically advertising and marketing that the system detects objects visually, much like a driver's eyes, and is highly effective at determining the size, lane position, and critical characteristics of detected objects.

72. Bendix, Paccar, and Navistar marketed, promoted, designed, and manufactured the Bendix Wingman Fusion System such that a driver would receive audible and visual alerts up to 3.5 seconds before potential impact when a large metallic object may be blocking a lane of travel.

73. Despite Bendix's, Paccar's, and Navistar's marketing, promoting, designing, and manufacturing of the Bendix Wingman Fusion System, the system fails to provide audible and visual alerts up to 3.5 seconds before potential impact when the system is engaged at speeds above 50 mph and even lower speeds at night or in low-visibility situations. The Defendants chose to conceal these facts and withhold their knowledge of these defects from the Plaintiffs and the class.

74. Navistar, Paccar, and Bendix engaged in a concerted marketing effort to misrepresent the quality, effectiveness, and capability of the defective Bendix systems to their customers including Plaintiffs and the class.

75. Bendix provided its own written representations in marketing materials including brochures, documents, and advertisements given directly to Plaintiffs and the class prior to the purchase of the defective power units. Navistar and Paccar included identical representations and warranties to Plaintiffs and the class in the written marketing materials of Navistar and Paccar including brochures, documents, and advertisements, with respect to the defective Bendix systems sold as part of the defective power units.

76. The Defendants' concerted marketing effort misrepresented that the defective Bendix systems would detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either of the defective Bendix Wingman systems at highway speeds and at night.

77. Navistar, Paccar, and Bendix concealed their own knowledge of the defects and limitations of the defective Bendix systems, including concealing their own discussions of the failings and limitations of the defective Bendix systems from their customers, including Plaintiffs and the class.

78. Navistar, Paccar, and Bendix took these actions to increase their sales of the Bendix Wingman Fusion System and Bendix Wingman Advanced System to capture market share and conceal the harm and risks associated with the defective Bendix systems.

79. Navistar, Paccar, and Bendix made these misrepresentations and suppressed and concealed the true facts during the marketing and sales of their power units equipped with either of the defective Bendix systems.

80. Navistar, Paccar, and Bendix knew that by concealing their knowledge of these defects, Plaintiffs, the class, and everyone else using America's roadways faced a heightened risk of injury and death due to avoidable crashes involving their defective products.

81. Navistar, Paccar, and Bendix also knew at the time of making these misrepresentations and suppressing and concealing the true facts, that its own customers, such as Plaintiffs and the class, would suffer significant economic damages in the form of overpaying for the defective power units, the costs of retrofitting their power units with safer alternative products,

such as the OnGuard or Detroit FCA systems, the costs of defending claims involving avoidable collisions caused by the failure of the defective Bendix systems to perform as intended, out of pocket payments for self-insured retention, self-insurance, deductibles, and attorney fees and costs of litigation arising out of avoidable collisions caused by the failure of the defective Bendix systems to perform as intended, Plaintiffs' and the class members' increased time and effort to find and access adequate insurance coverage and the increased costs of that coverage because Plaintiffs' and the class members' claims experience has been more severe than it would have been if Plaintiffs and the class had the benefit of a properly functioning FCA system rather than the defective Bendix systems.

82. Bendix, Navistar, and Paccar had actual knowledge that (1) each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered was defective at the time of its manufacture; (2) that each and every such system would not provide adequate, timely, warnings promised by Bendix; (3) that each and every such system would not detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either of the defective Bendix systems at highway speeds and at night; (4) that each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered would not provide autonomous emergency braking, stationary vehicle braking, impact alert, and stationary object alert at highway speeds and at night.

83. Bendix, Navistar, and Paccar entered into a conspiracy to (1) commit fraud by misrepresenting the performance of the defective Bendix systems to Plaintiffs and the class; (2) suppress and conceal the true facts regarding defects in the Bendix Wingman Fusion and Wingman Advanced Systems from Plaintiffs and the class; (3) knowingly sell defective power units equipped with either of the defective Bendix systems to Plaintiffs and the class, all with the intent to increase its own profits and market share resulting from these sales of defective power units equipped with the defective Bendix systems to Plaintiffs and the class.

84. Before Plaintiffs brought this action, Bendix, Navistar, and Paccar were apprised of the trouble with the power units equipped with the defective Bendix systems that Plaintiffs and the class bought. This is evident from Bendix's, Navistar's, and Paccar's communications about recalling the goods that they sold to Plaintiffs and the class, among other things.

85. Bendix had actual knowledge of the defects of the Bendix Wingman Fusion and Wingman Advanced Systems before the filing of this action. Despite this knowledge, Bendix chose to market and sell these defective products by misrepresenting their features and performance and concealing the defective nature of these products.

a) Bendix notified NHTSA of the defect on October 11, 2024.[1]

b) Bendix has been litigating in the Southern District of Illinois in *Lewis, et al. v. Hirschbach Motor Lines, et al.*, Case No. 3:20-cv-01355-JPG regarding the defective Bendix systems well before the filing of this lawsuit.

c) "[B]eginning in 2023, Bendix began to receive a small but increasing number of reports of issues with the performance of the ABS system from vehicles in the field."[2]

d) At least as early as September 2024, "Bendix learned that in the presence of high electrical noise and low Power Line Carrier (PLC) signal strength, the EC80 may incorrectly process certain signals sent between the truck tractor and the trailer or other towed vehicle. If this occurs, the EC80 may set an ABS ECU fault or may stop operating."[3]

e) On October 16, 2024, NHTSA wrote to Mr. William Amato, a lead engineer at Bendix and the person who classified these failures as

[1] National Highway Traffic Safety Administration, Recall Acknowledgment Letter to Bendix Commercial Vehicle Systems LLC, NHTSA Recall No. 24E-086 (Oct. 16, 2024), https://static.nhtsa.gov/odi/rcl/2024/RCAK-24E086-3120.pdf

[2] Bendix Commercial Vehicle Systems LLC, Chronology of Defect Determination for Recall No. 24E086 (Oct. 11, 2024), https://static.nhtsa.gov/odi/rcl/2024/RMISC-24E086-5355.pdf

[3] *Id.*

benign in 2015, acknowledging Bendix's defect and recall notification provided to NHTSA.[4]

86. Paccar had actual knowledge of the defects of the Bendix Wingman Fusion and Wingman Advanced Systems before the filing of this action.

a) PACCAR participated in the conspiracy to fraudulently market these products with knowledge of their defects and to withhold the facts known to PACCAR regarding the defective nature of these products.

b) Bendix had a legal duty to notify its purchasers—Paccar included—of the safety recall initiated by NHTSA in October 2024.

c) This recall, NHTSA Campaign Number 24E086000, has at all times been public record.

d) PACCAR received notice from Bendix these systems were subject to recall as stated in its own NHTSA filings: "PACCAR Safety and Compliance informed that Bendix is amending its 573 to include PACCAR vehicles."[5]

e) Paccar certainly had actual knowledge of the defects for a significant amount of time both (1) before alerting NHTSA and (2) before the filing of this lawsuit.[6]

87. Navistar had actual knowledge of the defects of the Bendix Wingman Fusion and Wingman Advanced Systems before the filing of this action.

a) Navistar has been litigating in the Southern District of Illinois in *Lewis v. Hirschbach Motor Lines*, Case No. 3:20-cv-01355-JPG regarding the defective Bendix systems well before the filing of this lawsuit.

---

[4] National Highway Traffic Safety Administration, Recall Acknowledgment Letter to Bendix Commercial Vehicle Systems LLC, NHTSA Recall No. 24E-086 (Oct. 16, 2024), https://static.nhtsa.gov/odi/rcl/2024/RCAK-24E086-3120.pdf

[5] PACCAR Inc., Part 573 Safety Recall Report No. 24V-915 (Dec. 9, 2024), https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24V915-6438.PDF

[6] Bendix Commercial Vehicle Systems LLC, Notification Letter to OEMs Regarding Recall No. 24E-086 (Oct. 2024), https://static.nhtsa.gov/odi/rcl/2024/RCMN-24E086-0331.pdf

b) On October 11, 2024, Navistar was listed as a purchaser of "this defective/noncompliant equipment for possible use or installation in new motor vehicles or new items of motor vehicle equipment."[7]

c) During product development and/or testing of the Wingman Fusion System, in April 2015, Navistar performed independent test drives of power units equipped with the Wingman Fusion System.

d) During the April 2015 testing, Navistar learned the Wingman Fusion System failed to detect a stationary pickup truck/utility trailer combination ahead of the Navistar power unit approximately 30-50 percent of the time, resulting in the complete failure of its emergency braking system to engage in each instance.

e) As set out herein, Navistar also engaged with Bendix to develop a marketing strategy to market the defective Bendix systems after learning of the defective nature of these systems in early 2015.

f) Navistar entered into a conspiracy with the other Defendants to fraudulently market the defective Wingman Fusion and Wingman Advanced systems and to conceal the true facts regarding the defective nature of these systems.

**B. Results Flowing from Defendants' Wrongdoing**

88. Plaintiffs' power units have been involved in numerous crashes where either of the defective Bendix systems failed to perform as marketed, promoted, and designed, leading to millions of dollars in economic damage to Plaintiffs.

89. Class members' power units have been involved in numerous crashes where either of the defective Bendix systems failed to perform as marketed, promoted, and designed, leading to hundreds of millions of dollars in economic damage to the class.

90. Plaintiffs' expert testing of the Bendix Wingman Fusion System has demonstrated that the system fails to perform in situations that are reasonably foreseeable, or should have been known as reasonably foreseeable, to Bendix, Paccar, and Navistar.

91. The failings identified by Plaintiffs' testing shows Plaintiffs and the Class have been denied the benefits of a properly functioning FCA system causing Plaintiffs and the class

[7] Bendix Commercial Vehicle Systems LLC, Part 573 Safety Recall Report No. 24E-086 (Oct. 11, 2024), https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24E086-1354.PDF

substantial economic damages, including the costs of defending claims, out of pocket payments for self-insured retention, self-insurance, deductibles, and attorney fees and costs of litigation. Plaintiffs' and the class members' ability to access adequate insurance coverage and the costs of that coverage have also been impacted by accidents caused by the failure of the defective Bendix systems to perform as intended.

92. The defective Bendix systems were unreasonably dangerous and defective when used as directed in their design due to, but not limited to, the following:

a) Failure to detect stopped vehicles in the driving lane in the path of Plaintiffs' and the class members' power units;

b) Failure to timely alert and/or properly warn Plaintiffs' and the class members' commercial motor vehicle drivers of the presence of stopped vehicles in the path of Plaintiffs' and the class members' power units so as to avoid the subject accident or mitigate any damages resulting therefrom;

c) Failed to timely and/or properly engage the passive accident mitigation technology to avoid the subject accident or mitigate any damages resulting therefrom;

d) Failed to provide appropriate "forward accident" warnings to Plaintiffs' and the class members' drivers when confronted with the presence of stopped vehicles within the driving lane of Plaintiffs' and the class members' power units;

e) Failed to timely provide "forward accident" warnings to Plaintiffs' and the class members' drivers when confronted with the presence of stopped vehicles within the driving lane of Plaintiffs' and the class members' power units;

f) Failed to warn, either orally or in writing, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage so late that no corrective action could be taken by Plaintiffs' and the class members' drivers when a stationary object would be blocking a lane of travel;

g) Failed to warn, either orally or in writing, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or engage at such a time where no corrective action could be

taken where a stationary object was occupying approximately half of the travel lane;

h) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such a time where no corrective action could be taken by a driver with the presence of a grade being traveled upon and where a stationary object would be blocking a lane of travel;

i) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such a time where no corrective action could be taken by a driver when operating at highway speeds;

j) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such a time where no corrective action could be taken by a driver who is operating a power unit at 50 mph or greater;

k) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System's performance would decrease at speeds greater than 50 mph;

l) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System would not engage or would engage at such time where no corrective action could be taken by a driver when operating at night or in circumstances of limited illumination and/or visibility;

m) Failed to warn, either in writing or orally, that the Bendix Wingman Fusion System and Bendix Wingman Advanced System provided limited audio and/or visual warnings alerting a driver to a hazard ahead;

n) Failed to provide sufficient audio and/or visual cues alerting a driver to a hazard ahead;

o) Failed to equip the Bendix Wingman Fusion System with reasonably feasible alternative radar, camera, and/or algorithmic components that would have detected the presence of a slowing or stopped vehicle within the driving lane of Plaintiffs' and the class members' power units, and failed to properly warn Plaintiffs' and the class members' drivers at such a time where corrective action could have been taken;

p) Improperly equipped the Bendix Wingman Fusion System and Bendix Wingman Advanced System with a 24 GHz radar component which provided limited performance regarding the radar cone being too narrow and the radar's reach being limited to no greater than 500 feet when other competitors in the marketplace were using 77 GHz radar units which provided a greater radar cone of vision and far greater reach, which limited the ability of the Bendix Wingman Fusion System and Bendix Wingman Advanced System to detect stationary objects blocking a lane of travel or portions of a lane of travel;

q) Failed to provide Plaintiffs' and the class members' drivers in the Bendix Wingman Fusion System and Bendix Wingman Advanced System Operator's Manuals with proper warnings regarding its performance limitations in detecting the presence of stationary objects blocking a lane of travel or portions of a lane of travel, such that reasonably foreseeable drivers would comprehend and appreciate the risks associated with operating the Bendix Wingman Fusion System and Bendix Wingman Advanced System at highway speeds.

93. The subject Navistar and Paccar power units equipped with either of the defective Bendix systems, were designed, manufactured, and distributed by Bendix, Paccar, and Navistar, and were unreasonably dangerous and defective beyond the extent contemplated by ordinary consumers with ordinary knowledge regarding these products, including drivers, owners, and operators of Class 4-8 trucks and buses used in both interstate and intrastate commerce purposes.

94. The subject power units equipped with either of the defective Bendix systems were defective due to inadequate warnings and/or instructions describing the systems' limitations that should have been provided to its consumers in a practical manner for drivers, owners, and operators of Class 4-8 trucks and buses used in both interstate and intrastate commerce.

95. Before this action was filed, Bendix had actual knowledge that (1) each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered was defective at the time of its manufacture; (2) that each and every such system would not provide adequate, timely, warnings promised by Bendix; (3) that each and every such system would not detect stationary objects at highway speeds and vehicles moving much slower than

power units equipped with either of the defective Bendix systems at highway speeds and at night; (4) that each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered would not provide autonomous emergency braking, stationary vehicle braking, impact alert, and stationary object alert at highway speeds and at night.

96. Before this action was filed, Navistar had actual knowledge that (1) each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered was defective at the time of its manufacture; (2) that each and every such system would not provide adequate, timely, warnings promised by Bendix; (3) that each and every such system would not detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either of the defective Bendix systems at highway speeds and at night; (4) that each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered would not provide autonomous emergency braking, stationary vehicle braking, impact alert, and stationary object alert at highway speeds and at night.

97. Before this action was filed, Paccar had actual knowledge that (1) each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered was defective at the time of its manufacture; (2) that each and every such system would not provide adequate, timely, warnings promised by Bendix; (3) that each and every such system would not detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either of the defective Bendix systems at highway speeds and at night; (4) that each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered would not provide autonomous emergency braking, stationary vehicle braking, impact alert, and stationary object alert at highway speeds and at night.

## V. Class Action Allegations

98. Defendants' uniform conduct is equally applicable to Plaintiffs and the class. Plaintiffs bring this class action against Defendants for: (1) Fraud in the Inducement; (2) Breach of Contract; (3) Breach of Express Warranties; and (4) Breach of Implied Warranties.

99. The damages model for the Plaintiffs and the class includes ascertainable economic damages for: (1) overpaying for power units equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System; (2) the costs of retrofitting those power units with a working FCA system; (3) economic damages sustained by defending claims and making out of pocket payments for (a) self-insured retention, (b) self-insurance, (c) deductibles, (d) claims payments, (e) property damage, (f) lost time and revenue, and (g) attorney fees and costs of litigation arising from foreseeable and avoidable rear end crashes where the failure of either the Bendix Wingman Fusion System or the Bendix Wingman Advanced System to perform as intended was a proximate cause of the crash, (h) increased costs of insurance, and other categories of recoverable damages suffered by Plaintiffs and the class. Plaintiffs and the class also seek an award of exemplary damages for Defendants' outrageous conduct here, ratified and condoned by the highest levels of leadership and management in the Defendants' organizations, as well as attorney's fees and the costs of this litigation.

100. Plaintiffs bring this class action under Rule 23 and seek certification of the claims and issues. The proposed class is defined as:

a) All persons, as defined by law, who purchased a new power unit equipped with either the Bendix Wingman Fusion System or Bendix Wingman Advanced System and manufactured by either Navistar or PACCAR on or after July 1, 2015.

b) Excluded from the class are all persons who are employees, directors, officers, and agents of any Defendant; governmental entities; and

c) the Court, the Court's immediate family, and Court staff.

101. Plaintiffs reserve the right to amend or modify the class definitions with greater specificity or division into subclasses after having an opportunity to conduct discovery.

102. Plaintiffs allege that their class definition is adequate.

103. Plaintiffs allege that the class is ascertainable from the records of the Defendants and the members of the class.

104. A class action is superior to individual actions to avoid the risk of inconsistent decisions and because common questions of law and fact predominate.

105. A class action is superior to individual actions because there are thousands of class members spread all over the United States, and joinder is impracticable.

106. With respect to commonality, Plaintiffs and the class have alleged that Defendants have engaged in a conspiracy to commit fraud and suppression in the sales and marketing of defective power units equipped with the defective Bendix systems in violation of law.

107. Defendants used a common set of false and deceptive representations about the efficacy and performance of the defective Bendix systems with the actual knowledge that (1) each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered was defective at the time of its manufacture; (2) that each and every such system would not provide adequate, timely warnings promised by Bendix; (3) that each and every system would not detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either the Bendix Wingman Fusion System or Wingman Advanced System at highway speeds and at night; (4) that each and every Wingman Fusion and Wingman Advanced System that Bendix manufactured, sold, and delivered would not provide autonomous emergency braking, stationary vehicle braking, impact alert, and stationary object alert at highway speeds and at night.

108. Through systematic fraud and suppression in the sales and marketing of the defective Bendix systems, Defendants sold these systems to Plaintiffs and the class.

109. Through their conduct, Defendants engaged in fraud in the inducement, breached their contracts with Plaintiffs and the class, breached their express warranties, and breached their implied warranties.

110. The allegations are such that a class action would generate common answers apt to drive the resolution of the litigation and Plaintiffs' and the class members' allegations depend upon common contentions of such nature that the allegations are capable of class-wide resolution.

111. The named Plaintiffs' claims are typical of the class members' claims here. In other words, all the claims rise and fall on the ability to prove the wrongdoing of Defendants here and arise from a core set of facts common to the Defendants and their alleged wrongdoing.

112. Plaintiffs are adequate class representatives who will fairly and adequately protect the interests of the class. Plaintiffs' claims are aligned with the class they seek to represent, and there are no conflicts of interest between Plaintiffs and the members of the class.

113. Plaintiffs have retained competent and skilled class counsel who will adequately represent the interests of the class, have adequate resources to pursue the case to completion, and will invest the time and effort necessary to adequately represent the interests of Plaintiffs and the class.

114. There are questions of law or fact common to class members that predominate over any questions affecting only individual members.

115. The use of a class action in this context is superior to individual actions by members of the class because the class action device will achieve economies of time, effort, and expense, and will promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This will result in judicial economy, protecting the rights of absent class members, and promotes consistency of treatment of the class members.

## VI. Causes of Action

### Count I
### Fraud in the Inducement Against Bendix Commercial Vehicle Systems LLC, PACCAR Inc., and Navistar, Inc.

116. Plaintiffs reallege all prior paragraphs here.

117. Plaintiffs make this claim individually and on behalf of the class.

118. From at least July 2015 until at least January 2024, Defendants engaged in a conspiracy to defraud the Plaintiffs and the class that included making the following false statements:

a) The Wingman Advanced System would detect stationary objects and provide warnings to drivers 3.0 seconds before a potential collision.

b) The Wingman Fusion System would detect stationary objects and provide warnings to drivers 3.5 seconds before a potential collision.

c) The Wingman Fusion and Wingman Advanced Systems were not defective and fit for their intended purpose as FCA systems.

d) The Wingman Fusion and Wingman Advanced Systems would provide adequate, timely warnings.

e) The Wingman Fusion and Wingman Advanced Systems would detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either the Bendix Wingman Fusion System or Wingman Advanced System at highway speeds and at night.

f) The Wingman Fusion and Wingman Advanced Systems would provide autonomous emergency braking at highway speeds and at night.

g) The Wingman Fusion and Wingman Advanced Systems would provide stationary-vehicle braking at highway speeds and at night.

h) The Wingman Fusion and Wingman Advanced Systems would provide impact alert at highway speeds and at night.

i) The Wingman Fusion and Wingman Advanced Systems would provide stationary-object alerts at highway speeds and at night.

119. The Defendants knew that each of the foregoing statements were false at all times relevant to this controversy.

120. The Defendants consciously and deliberately intended these false statements to induce the Plaintiffs and the class to purchase power units from them equipped with the defective Bendix Advanced and Bendix Fusion systems.

121. The Defendants also intentionally withheld, concealed, and suppressed the true facts from Plaintiffs.

122. Plaintiffs relied upon the truth of Defendants' false statements and could not discover the true facts withheld, concealed, and suppressed by the Defendants in making their purchase decisions.

123. Plaintiffs' reliance on these statements was justified because the Plaintiffs had no way of learning the falsity of these statements or the true facts through the exercise of reasonable diligence.

124. Plaintiffs and the class suffered injuries and damages as set out herein resulting from the Defendants' conduct.

Plaintiffs and the class pray for entry of a judgment in their favor and against Bendix, Paccar, and Navistar under Count I of the Complaint for all damages and injuries suffered by the class due to the wrongdoing of Defendants, Bendix, Paccar, and Navistar, and to the fullest extent permitted by law.

## Count II
### BREACH OF CONTRACT AGAINST BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.

125. Plaintiffs reallege all prior paragraphs here.

126. Plaintiffs make this claim individually and on behalf of the class.

127. There was a contract between Plaintiffs and the class and Bendix, Paccar, and Navistar to provide power units with properly functioning FCA systems.

128. Bendix, Paccar, and Navistar breached their contracts with Plaintiffs and the class by delivering power units with defective FCA systems.

129. As a direct and proximate result of Bendix's, Paccar's, and Navistar's breach of contract, Plaintiffs and the class have been caused to suffer injuries and damages as set out herein and they claim all damages allowed by law.

Plaintiffs and the class members pray for entry of a judgment in their favor and against Bendix, Paccar, and Navistar under Count II of the Complaint for all damages and injuries suffered

by the class due to the breach of contract by Bendix, Paccar, and Navistar and to the fullest extent permitted by law.

**Count III**
**BREACH OF EXPRESS WARRANTY AGAINST BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.**

130. Plaintiffs reallege all prior paragraphs here.

131. Plaintiffs make this claim individually and on behalf of the class.

132. Navistar and Paccar are "sellers" under U.C.C. §2-313, and as adopted by the states[8] (including Illinois in 810 ILCS 5/2-313), with respect to the defective power units.

133. Bendix is a "seller" with respect to the defective Wingman Fusion and Wingman Advanced systems sold as part of the defective power units because Bendix expressly warranted its goods to Plaintiffs and the class directly through its own written representations, and directly through the representations Bendix had Navistar and Paccar include in their respective marketing materials, including brochures, documents, and advertisements given directly to Plaintiffs and the class prior to purchase of the defective power units.

134. Plaintiffs and the class are U.C.C. "buyers" under the sales statute.

135. Section 2-313 provides that the sellers' affirmations of fact or promises about the goods that become part of the basis of the bargain creates express warranties that the goods will conform to the affirmations or promises. Descriptions of goods that become part of the bargain

[8] Ala. Code §7-2-313; Alaska Stat. §45.02.313; Ariz. Rev. Stat. Ann. §47-2313; Ark. Code Ann. §4-2-313; Cal Com. Code §2313; Colo. Rev. Stat. §4-2-313; Conn. Gen. Stat. §42a-2-313; Del. Code Ann. tit. 6, §2-313; D.C. Code §28:2-313; Fla. Stat. §672.313; Ga. Code Ann. §11-2-313; Haw. Rev. Stat. §490:2-313; Idaho Code Ann. §28-2-313; Ind. Code Ann. §26-1-2-313; Iowa Code Ann. §554.2313; Kan. Stat. Ann. §84-2-313; Ky. Rev. Stat. Ann. §355.2-313; Me. Rev. Stat. Ann. tit. 11, §2-313; Md. Code Ann., Com. Law §2-313; Mass. Ann. Laws ch. 106, §2-313; Mich. Stat. Ann. §440.2313; Minn. Stat. §336.2-313; Miss. Code Ann. §75-2-313; Mo. Rev. Stat. §400.2-313; Mont. Code Ann. §30-2-313; Neb. Rev. Stat. (U.C.C.) §2-313; Nev. Rev. Stat. §104.2313; N.H. Rev. Stat. Ann. §382-A:2-313; N.J. Stat. Ann. §12A:2-313; N.M. Stat. Ann. §55-2-313; N.Y. U.C.C. Law §2-313; N.C. Gen. Stat. §25-2-313; N.D. Cent. Code §41-02-30; Ohio Rev. Code Ann. §1302.26; Okla. Stat. tit. 12A, §2-313; Or. Rev. Stat. §72.3130; 13 Pa. Cons. Stat. §2313; R.I. Gen. Laws §6A-2-313; S.C. Code Ann. §36-2-313; S.D. Codified Laws §57A-2-313; Tenn. Code Ann. §47-2-313; Tex. Bus. & Com. Code Ann. §2.313; Utah Code Ann. §70A-2-313; Vt. Stat. Ann. tit. 9A, §2-313; Va. Code Ann. §8.2-313; Wash. Rev. Code §62A.2-313; W. Va. Code §46-2-313; Wis. Stat. §402.313; Wyo. Stat. Ann. §34.1-2-313; *see* La. Rev. Stat. Ann. §9:2800.53(6).

also create express warranties that the goods will conform to those descriptions. And samples of goods that become part of the bargain create express warranties that the goods will conform to the samples.

136. Navistar, Paccar, and Bendix made affirmations of fact or promises that are part of the basis of the bargain between Plaintiffs and the class as buyers that:

a) The Wingman Advanced System would detect stationary objects and provide warnings to drivers 3.0 seconds before a potential collision.

b) The Wingman Fusion System would detect stationary objects and provide warnings to drivers 3.5 seconds before a potential collision.

c) The Wingman Fusion and Wingman Advanced Systems were not defective and fit for their intended purpose as FCA systems.

d) The Wingman Fusion and Wingman Advanced Systems would provide adequate, timely warnings.

e) The Wingman Fusion and Wingman Advanced Systems would detect stationary objects at highway speeds and vehicles moving much slower than power units equipped with either the Bendix Wingman Fusion System or Wingman Advanced System at highway speeds and at night.

f) The Wingman Fusion and Wingman Advanced Systems would provide autonomous emergency braking at highway speeds and at night.

g) The Wingman Fusion and Wingman Advanced Systems would provide stationary-vehicle braking at highway speeds and at night.

h) The Wingman Fusion and Wingman Advanced Systems would provide impact alert at highway speeds and at night.

i) The Wingman Fusion and Wingman Advanced Systems would provide stationary-object alerts at highway speeds and at night.

137. These affirmations of fact or promises, as part of the basis of the bargain, are express warranties covering Plaintiffs' and class members' purchases of the defective power units.

138. Defendants breached these express warranties as the defective power units do not conform to any of these express warranties.

139. Before Plaintiffs brought this action, Navistar, Paccar, and Bendix had actual knowledge that the defective power units did not comply with the express warranties described above.

140. Rather than repair the defects, Navistar, Paccar, and Bendix engaged in a common scheme to sell the defective products through misrepresentation and suppression of key facts including their own actual knowledge of the defects.

141. Plaintiffs and the class have privity with all Defendants because Navistar and Paccar sold the defective power units and Bendix is a "seller" with respect to the defective Wingman Fusion and Wingman Advanced systems sold as part of the defective power units, and because Bendix expressly warranted its goods to Plaintiffs and the class directly through its own written representations, and directly through the representations in marketing materials, including brochures, documents, and advertisements given directly to Plaintiffs and the class prior to purchase of the defective power units.

142. As a direct and proximate result of Navistar's, Paccar's, and Bendix's breaches of express warranties, Plaintiffs and the class sustained damages in an amount to be proven at trial.

Plaintiffs and the class members pray for entry of a judgment in their favor and against Bendix, Paccar, and Navistar under Count III of the Complaint for all damages and injuries suffered by the class due to the wrongdoing of Bendix, Paccar, and Navistar, and to the fullest extent permitted by law.

## Count IV
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST BENDIX COMMERCIAL VEHICLE SYSTEMS LLC, PACCAR INC., AND NAVISTAR, INC.

143. Plaintiffs reallege all prior paragraphs here.

144. Plaintiffs make this claim individually and on behalf of the class.

145. Navistar and Paccar are "merchants" under U.C.C. §2-314, and as adopted by the states[9] (including Illinois in 810 ILCS 5/2-314), with respect to the defective power units. Bendix is a "merchant" under those statutes with respect to the defective Wingman systems.

146. Section 2-314 creates a warranty of merchantability implicit in the contracts for the sales of defective power units equipped with the defective Wingman systems. The defective power units were bought and sold subject to the implied warranty of merchantability.

147. Navistar, Paccar, and Bendix breached the implied warranty of merchantability. At the time of sale and all relevant times, the defective power units equipped with the defective Wingman systems would not pass without objection in the trade under the contract description, are not fit for their ordinary purpose, and do not conform to the promise or affirmations of fact made in marketing materials.

148. As set out in this complaint, Navistar, Paccar, and Bendix had actual knowledge that the goods were not merchantable before selling any of the defective power units and before Plaintiffs brought this action.

149. Plaintiffs and the class have privity with all Defendants because Navistar and Paccar sold the defective power units and Bendix is a "seller" with respect to the defective Wingman Fusion and Wingman Advanced systems sold as part of the defective power units, and because Bendix expressly warranted its goods to Plaintiffs and the class directly through its own written representations, and directly through the representations in marketing materials, including

---

[9] Ala. Code §7-2-314; Alaska Stat. §45.02.314; Ariz. Rev. Stat. Ann. §47-2314; Ark. Code Ann. §4-2-314; Cal Com. Code §2314; Colo. Rev. Stat. §4-2-314; Conn. Gen. Stat. §42a-2-314; Del. Code Ann. tit. 6, §2-314; D.C. Code §28:2-314; Fla. Stat. §672.314; Ga. Code Ann. §11-2-314; Haw. Rev. Stat. §490:2-314; Idaho Code Ann. §28-2-314; Ind. Code Ann. §26-1-2-314; Iowa Code Ann. §554.2314; Kan. Stat. Ann. §84-2-314; Ky. Rev. Stat. Ann. §355.2-314; Me. Rev. Stat. Ann. tit. 11, §2-314; Md. Code Ann., Com. Law §2-314; Mass. Ann. Laws ch. 106, §2-314; Mich. Stat. Ann. §440.2314; Minn. Stat. §336.2-314; Miss. Code Ann. §75-2-314; Mo. Rev. Stat. §400.2-314; Mont. Code Ann. §30-2-314; Neb. Rev. Stat. (U.C.C.) §2-314; Nev. Rev. Stat. §104.2314; N.H. Rev. Stat. Ann. §382-A:2-314; N.J. Stat. Ann. §12A:2-314; N.M. Stat. Ann. §55-2-314; N.Y. U.C.C. Law §2-314; N.C. Gen. Stat. §25-2-314; N.D. Cent. Code §41-02-31; Ohio Rev. Code Ann. §1302.27; Okla. Stat. tit. 12A, §2-314; Or. Rev. Stat. §72.3140; 13 Pa. Cons. Stat. §2314; R.I. Gen. Laws §6A-2-314; S.C. Code Ann. §36-2-314; S.D. Codified Laws §57A-2-314; Tenn. Code Ann. §47-2-314; Tex. Bus. & Com. Code Ann. §2.314; Utah Code Ann. §70A-2-314; Vt. Stat. Ann. tit. 9A, §2-314; Va. Code Ann. §8.2-314; Wash. Rev. Code §62A.2-314; W. Va. Code §46-2-314; Wis. Stat. §402.314; Wyo. Stat. Ann. §34.1-2-314; *see* La. Civ. Code Ann. art. 2524.

brochures, documents, and advertisements given directly to Plaintiffs and the class prior to purchase of the defective power units.

150. As a direct and proximate result of Navistar's, Paccar's, and Bendix's breaches of the implied warranty of merchantability, Plaintiffs and the class sustained damages in an amount to be proven at trial.

Plaintiffs and the class members pray for entry of a judgment in their favor and against Bendix, Paccar, and Navistar under Count IV of the Complaint for all damages and injuries suffered by the class due to the wrongdoing of Bendix, Paccar, and Navistar and to the fullest extent permitted by law.

## Count V

### Breach of Implied Warranty of Fitness for a Particular Purpose Against Bendix Commercial Vehicle Systems LLC, Paccar Inc., and Navistar, Inc.

151. Plaintiff reallege all prior paragraphs here.

152. Plaintiffs make this claim individually and on behalf of the class.

153. Navistar and Paccar are "sellers" under U.C.C. §2-315, and as adopted by the states (including Illinois in 810 ILCS 5/2-315),[10] with respect to the class vehicles. Bendix is a "seller" with respect to the defective Bendix systems. Plaintiffs and the class are "buyers" under those statutes.

[10] Ala. Code §7-2-315; Alaska Stat. §45.02.315; Ariz. Rev. Stat. Ann. §47-2315; Ark. Code Ann. §4-2-315; Cal Com. Code §2315; Colo. Rev. Stat. §4-2-315; Conn. Gen. Stat. §42a-2-315; Del. Code Ann. tit. 6, §2-315; D.C. Code §28:2-315; Fla. Stat. §672.315; Ga. Code Ann. §11-2-315; Haw. Rev. Stat. §490:2-315; Idaho Code Ann. §28-2-315; Ind. Code Ann. §26-1-2-315; Iowa Code Ann. §554.2315; Kan. Stat. Ann. §84-2-315; Ky. Rev. Stat. Ann. §355.2-315; Me. Rev. Stat. Ann. tit. 11, §2-315; Md. Code Ann., Com. Law §2-315; Mass. Ann. Laws ch. 106, §2-315; Mich. Stat. Ann. §440.2315; Minn. Stat. §336.2-315; Miss. Code Ann. §75-2-315; Mo. Rev. Stat. §400.2-315; Mont. Code Ann. §30-2-315; Neb. Rev. Stat. (U.C.C.) §2-315; Nev. Rev. Stat. §104.2315; N.H. Rev. Stat. Ann. §382-A:2-315; N.J. Stat. Ann. §12A:2-315; N.M. Stat. Ann. §55-2-315; N.Y. U.C.C. Law §2-315; N.C. Gen. Stat. §25-2-315; N.D. Cent. Code §41-02-32; Ohio Rev. Code Ann. §1302.28; Okla. Stat. tit. 12A, §2-315; Or. Rev. Stat. §72.3150; 13 Pa. Cons. Stat. §2315; R.I. Gen. Laws §6A-2-315; S.C. Code Ann. §36-2-315; S.D. Codified Laws §57A-2-315; Tenn. Code Ann. §47-2-315; Tex. Bus. & Com. Code Ann. §2.315; Utah Code Ann. §70A-2-315; Vt. Stat. Ann. tit. 9A, §2-315; Va. Code Ann. §8.2-315; Wash. Rev. Code §62A.2-315; W. Va. Code §46-2-315; Wis. Stat. §402.315; Wyo. Stat. Ann. §34.1-2-315; *see* La. Civ. Code Ann. art. 2524.

154. At the time of contracting, Navistar, Paccar, and Bendix had reason to know that Plaintiffs and the class had a particular purpose for which the defective power units and Wingman systems were required. That particular purpose includes operating commercial motor vehicles in compliance with Federal Motor Carrier Safety Regulations. Plaintiffs and the class relied on Navistar's, Paccar's, and Bendix's skill or judgment to select or furnish suitable goods. Navistar, Paccar, and Bendix knew that Plaintiffs and the class were relying on that skill and judgment.

155. Section 2-315 creates a warranty that goods are fit for a particular purpose. That warranty is implicit in the contracts for the sales of the defective power units equipped with the defective Bendix systems. The defective power units were bought and sold subject to the implied warranty of fitness for a particular purpose.

156. Navistar, Paccar, and Bendix breached the implied warranty of fitness for a particular purpose. Among other things, they sold Plaintiffs and the class defective power units equipped with the defective Bendix systems for use in commerce that must comply with Federal Motor Carrier Safety Regulations, including 49 C.F.R. §§ 393.3 and 396.3(a)(1). Those regulations prohibit Plaintiffs and the class from using "equipment or accessories" that decrease safety and mandate that all "parts and accessories" be in "safe and proper operating condition at all times."

157. As set out herein, Navistar, Paccar, and Bendix had actual knowledge that the goods were not fit for their particular purpose before Plaintiffs brought this action.

158. Plaintiffs and the class have privity with all Defendants because Navistar and Paccar sold the defective power units and Bendix is a "seller" with respect to the defective Wingman Fusion and Wingman Advanced systems sold as part of the defective power units, and because Bendix expressly warranted its goods to Plaintiffs and the class directly through its own written representations, and directly through the representations included in marketing materials, including brochures, documents, and advertisements given directly to Plaintiffs and the class prior to purchase of the defective power units. Said representations by Bendix touch upon the fitness of the Wingman Fusion and Wingman Advanced Systems as FCA systems.

159. As a direct and proximate result of Navistar, Paccar, and Bendix's breaches of the implied warranty of fitness for a particular purpose, Plaintiffs and the class sustained damages in an amount to be proven at trial.

Plaintiffs and the class members pray for entry of a judgment in their favor and against Bendix, Paccar, and Navistar under Count V of its Complaint for all damages and injuries suffered by the class due to the wrongdoing of Bendix, Paccar, and Navistar, and to the fullest extent permitted by law.

**Jury Demand**

Plaintiffs demand a jury trial.

Respectfully submitted,

*/s/ Nick Wooten*
Nick Wooten
CHEELEY LAW GROUP LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
(770) 814-7001
nick@cheeleylawgroup.com

*/s/ Matthew S. Hefflefinger*
*/s/ Devin M. Taseff*
Matthew S. Hefflefinger (ARDC No. 6201281)
Devin M. Taseff (ARDC No. 6333448)
CHARTWELL LAW
7707 N. Knoxville Avenue
Suite 201-A
Peoria, Illinois 61614
(309) 225-5560
mhefflefinger@chartwelllaw.com
dtaseff@chartwelllaw.com